# MARTIN *v.* ROWLEY.

PATENTS; INTERFERENCE; ORIGINALITY.

Where, in an interference involving an improvement in artificial limbs, the question was one of originality, and it appeared that the junior party was a manufacturer of artificial limbs, and a prolific inventor in that art, and the senior party had been his employee until about four months before he filed his application, when he entered the employ of a competing concern, and a month thereafter embodied the invention in a full-sized device, although he was not a mechanic nor skilled in the art, but was the wearer of two artificial limbs; and the junior party's testimony that he disclosed the invention to the senior party while the latter was in his employ was corroborated, although denied by the senior party, and it was admitted by the senior party that the junior party was in the habit of showing him the improvements and inventions he made, it was *held* that the junior party had sustained the burden of proof upon him, and was entitled to an award of priority.

No. 575. Patent appeals. Submitted May 14, 1909. Decided June 4, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                *Affirmed.*

The facts are stated in the opinion.

*Mr. J. William Ellis* for the appellant.

*Messrs. Rummler & Rummler* and *Mr. Howard A. Coombs* for the appellee.

Mr. Justice ROBB delivered the opinion of the court:

This appeal brings into review the decision of the Commissioner of Patents, in an interference proceeding, overruling the

decision of a majority of the Board of Examiners in Chief, sustaining the decision of the Examiner of Interferences.

Charles B. Martin filed his application May 16, 1906. James F. Rowley filed five months later.

The invention is narrow in scope, and resides in a changed location of the connection between the suspender and leg section of an artificial limb. The counts are as follows:

"1. The combination with a thigh-section and a leg-section pivotally connected together, of a lever fulcrumed in the thigh-section, and having upper and lower arms, the lower arm being connected with the leg-section, a suspender connected with the upper arm of the lever, and means co-operating with the lever for limiting the forward movement of the leg-section, substantially as set forth.

"2. The combination with a thigh-section, a leg-section, and a pivot connecting the same, the thigh-section being provided in its sides above said pivot with openings and in its rear side with a slot, a lever mounted on said pivot, and having an upper arm arranged wholly within the thigh-section, and a lower arm extending downwardly through the slot of the thigh-section into the leg-section, and secured to the latter, and a suspender having members which pass through the side openings of the thigh-section, and are secured to the upper arm of said lever, substantially as set forth."

The only question in the case being that of originality, we proceed immediately to a consideration of that question. Rowley is a manufacturer of artificial limbs, and a prolific inventor in that art. Martin entered his employ in 1897 "as general office man and bookkeeper," and, with a slight interruption, remained until January 11, 1906, when he entered the employ of a competing firm, the Queen City Artificial Limb Company, of Buffalo, New York. While Martin claims to have conceived the invention in December, 1904, there is no evidence, outside of his own testimony, that he disclosed it to anyone prior to January 15, 1906, when he entered the employ of the Queen City Company. *Within a month after that time,* however, his diligence had been so marked that the invention had been embodied in a

full-sized device. So far as the record discloses, he was not a mechanic nor skilled in the art when he entered Rowley's employ. He was, however, a wearer of two artificial limbs.

Rowley claims to have conceived the invention early in 1900, and to have then fully disclosed it to Martin. The Board of Examiners in Chief were unanimously of the opinion that Rowley in fact conceived the invention as claimed, but a majority of the Board were not "convinced that this invention was adequately disclosed to Martin at that time, or that Martin acquired any information concerning it." The third member of the Board was of the opinion that, on the whole, "the weight of evidence favors the view that Martin did derive his idea from Rowley," and that opinion was sustained by the Commissioner.

We have examined the evidence and concur in the finding of the Board and Commissioner, that Rowley has established conception of the invention as early as 1900. Did he disclose that conception to Martin? As to the relation then existing between the parties, Rowley, in his testimony, says: "After I became thoroughly acquainted, as I supposed, with Mr. Martin, I don't think there was anything connected with the business with which he did not become acquainted; in fact, if anything was invented, it was talked over with him. If anything was to be tested or tried, it was either tried on him or tried in his presence. He tested out several devices, sometimes suggesting improvements. He tested out a ball-bearing ankle joint. He tested out two forms of suspender, one of which was a modification of the suspender shown in Patent No. 644,464." Martin was asked by his counsel whether Rowley was in the habit of showing him the improvements and inventions he made, and replied "Yes, as stated in answer to Question 10 of J. F. Rowley's direct examination, I became acquainted with practically everything connected with the business, and tested and tried out various devices, and, as stated by Mr. Rowley, sometimes suggested improvements." There was, therefore, both opportunity and reason for a disclosure from Rowley to Martin. In corroboration of his own positive testimony on this point Rowley produced the manager of his branch office at St.

Louis, Mr. Elmer C. Moore, who was connected with the Chicago office from 1899 to 1904. The testimony of this witness bears the impress of sincerity. He says the device of the issue was experimentally inserted in an artificial limb, and that the limb was shown and fully explained to Martin by Rowley. The witness relates the circumstances under which the disclosure was made, and his testimony is consistent throughout. Martin, in his testimony, is equally positive that no disclosure was made to him. Opposed to this denial is the testimony of Rowley and Moore, and the inherent probabilities of the case. Rowley, we think, has satisfactorily explained why he did not apply for a patent on his discovery until after Martin claimed it. He says he concluded the device was not as good as a similar device in his patent of 1900, for the reason that it was not as durable, did not provide a means for changing the leverage of the suspender over the leg action, and lacked the clinging release of the suspender strap over the enameled knee. Martin, on the contrary, does not satisfactorily explain why he concealed his alleged discovery from Rowley, nor does he explain why he did nothing whatever about it until he entered the employ of another firm.

We hold that Rowley has sustained the burden of proof resting upon him, and that the decision of the Commissioner was right, and is, therefore, affirmed.

The clerk will certify this opinion and the proceedings in this court to the Commissioner, as required by law. *Affirmed.*